## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA,
EX REL JENNIFER D'AGOSTINO;
STATE OF NEW JERSEY, EX REL
JENNIFER D'AGOSTINO ("RELATOR")

               Plaintiff

v.

ALLIED DENTAL PRACTICES OF
NEW JERSEY (including, but not
Limited to the various locations
Named in the body of the Complaint);
EDWARD POLLER, DDS;  GLENN
PRAGER, DDS; CHRISTOPHER
EMMA, DDS; TODD PRAGER, DDS;
DANIEL DiCESARE, DDS; ABC
CORPORATIONS 1-10 (same names being
Fictitious) and JOHN DOES 1-10 (same
Names being fictitious) ACCOUNTANTS
1-10 (said names being fictitious and said
Names representing individual accountants
And/or accounting firms)

Civil Action No: _____

COMPLAINT AND PLAINTIFF'S
DEMAND FOR A JURY TRIAL

**FILED UNDER SEAL**
**PURSUANT TO 31 U.S.C.**
**§ 3730(b)(2)**
**DO NOT PLACE IN PRESS BOX**
**DO NOT ENTER ON PACER**

---

### FALSE CLAIMS ACT COMPLAINT
### AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. The Relator is the original source of the facts and information hereinafter set forth

concerning the activities of the various defendants.  The facts averred herein are based

RECEIVED

DEC 19 2012

1

AT 8:30_____M
WILLIAM T. WALSH
CLERK

upon the direct, independent and personal knowledge, and also upon various documents viewed by or in the possession of the Relator.

2. The Relator files this original petition under seal, on her behalf and on behalf of the United States of America and the State of New Jersey.  The Relator brings this action seeking to obtain compensatory, punitive and other damages, restitution, reimbursement and civil penalties under applicable law and other equitable and legal relief against the defendants.  The contents of the subject Complaint were provided to the United States Attorney's Office for the District of New Jersey in the form of a "Presentment" with various supporting documents on March 1, 2012.

3. The defendants have systematically converted patient "credits".  The credit are payment by the patient, insurer or credit companies, the U.S. government, the state of New Jersey or other programs.

4. It is believed that the defendants have "wiped out" over $4.4 million of monies owed to patients, insurance companies, the United States of America or the State of New Jersey.

### *PARTIES*

1. Plaintiff/Relator, Jennifer D'Agostino, is a resident of the State of New Jersey, currently residing at 417 Cedar Bridge Avenue #206, Lakewood, New Jersey 08701.

2

2.  The Allied Dental Practices have a number of dental practice locations in New Jersey and Pennsylvania with corporate offices at 1144 Hooper Avenue, Suite 201B, Toms River, New Jersey 08753.  It is unknown as to whether or not Allied Dental Practices and/or Allied Dental Practices of New Jersey are incorporated, operate as an LLC or as a partnership.

3.  The Allied Dental Practices include, but are not limited, to locations in Parsippany, New Jersey; Little Falls, New Jersey; Piscataway, New Jersey; Parlin, New Jersey; Hazlet, New Jersey; Aberdeen, New Jersey; Howell, New Jersey; Lakewood, New Jersey; Toms River, New Jersey; Manahawkin, New Jersey; Willingboro, New Jersey; Cherry Hill, New Jersey; Deptford, New Jersey; Turnersville, New Jersey; Absecon, New Jersey; Egg Harbor, New Jersey; Millville, New Jersey; Cape May, New Jersey; Easton, Pennsylvania; Bethlehem, Pennsylvania and Alban, Pennsylvania and may operate under various names, including, but not limited to, Egg Harbor Family Dental; Hazlet Family Dental; Parsippany Family Dental; Deptford Family Dental; Millville Family Dental; Easton Dental; Poller Dental Group; Cross Keys Family Dental; Alban Family Dental; Manahawkin Family Dental; Howell Family Dental; Aberdeen Family Dental; Shore Family Dental and/or other names, corporations, LLCs or partnerships.  Unless otherwise specified, all of the facilities will be referred to collectively as "Allied".

3

4. Edward Poller is a licensed dentist. The home address of Dr. Poller is not known. Dr. Poller is believed to be an owner, shareholder or partner of the various entities noted above.

5. Glenn Prager is a licensed dentist. Dr. Glenn Prager's home address is not known. Dr. Glenn Prager is believed to be an owner, shareholder or partner of the various entities noted above.

6. Todd Prager is a licensed dentist. Dr. Todd Prager's home address is not known. Dr. Todd Prager is believed to be an owner, shareholder or partner of the various entities noted above.

7. Christopher Emma is a licensed dentist who practices primarily in Bricktown, New Jersey. Dr. Emma's home address is not known. Dr. Emma is believed to be an owner, shareholder or partner of the various entities noted above.

8. Daniel DiCesare is a licensed dentist. Dr. DiCesare's home address is not known. Dr. DiCesare is believed to be an owner, shareholder or partner of the various entities noted above.

9. ABC CORPORATIONS 1-10 are fictitious corporations, the true names of which are not currently known but may have participated in the action alleged.

10. JOHN DOES 1-10 are fictitious individuals, the true names of which are not currently known but may have participated in the action alleged.

4

11. ACCOUNTANTS 1-10 are fictitious companies and/or corporations, the true names of which are not currently known but may have participated in the action alleged.

## JURISDICTION

12. This action arises under the False Claims Act, 31 U.S.C. § 3729 et seq. This court has jurisdiction over the case pursuant to 31 U.S.C. § 3732(a). Additionally, this court has jurisdiction over the case pursuant to the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a et seq. and/or the Financial Institutions Anti-Fraud Enforcement Act of 1990 ("FIAFEA"), 12 U.S.C. § 4201 et seq.

## VENUE

13. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) as the acts complained of and enumerated herein took place within this district. Venue is also proper in this district pursuant to 20 U.S.C. § 1391(b) and (c) because at all times herein relevant, the defendants could be found, resided and/or transacted business in this district.

## BACKGROUND

14. The Relator became employed at Toms River Family Dental (an "Allied" location) at 2224 Route 37, Toms River, New Jersey 08753 as a Financial Manager on or about January 27, 2009.  On or about December 27, 2010, the Relator was moved to Shore Family Dental (an "Allied" location) at 1358 Hooper Avenue, Toms River, New Jersey 08753 as a Financial Manager.

15. The Relator was responsible for various financial aspects of "Allied".  The Relator remained employed with "Allied" until February 15, 2012 when she was "let go".  A copy of the termination letter is attached hereto and made a part hereof as Exhibit "A".

16. "Allied" employs many dentists and has, on average, between 15 and 25 employees at each of the approximately 22 "Allied" locations.  Of the total employees at each location, the number of licensed dentists varies between two (2) and five (5).

17. On July 12, 2011 at 9:19 a.m., the Accounts Manager for "Allied" sent an e-mail to 30 individual employees of "Allied" at all locations. The e-mail sent by the "Accounts Manager" directed, in pertinent part:

> "Per our accounting firm, we must clean up our Easy Dental credit balances. I have been instructed that all offices need to run a credit report ending June 30, 2010. For all of these credit balances, we must debit the account to bring it to

zero. Please use the "debit adjustment" code with a note indicating family credit equals (fill in the dollar amount). Your initials."

A copy of the e-mail "string" that transpired between the Relator and others on that, and subsequent, days is attached hereto and made a part hereof as Exhibit "B". "Easy Dental" is the accounting software used by "Allied".

18. The direction from the Accounts Manager would "wipe out" the credit balance of every individual patient in all of the practice locations.

19. The direction from the Account Manager directed that a "snapshot" be taken of all patient accounts as of June, 2010, the credit balance be "wiped out" in July, 2011 and, in some cases, the entry be back dated to the previous year. This direction was regardless of the source of the credit balance and was also not specific to whether or not the patient was currently being treated at "Allied".

20. The Accounts Manager for "Allied" followed the earlier e-mail at 1:59 on July 12, 2011 indicating:

> "Please date the debit adjustments to the year the credit occurred. If the credit has been sitting there since 2009, date the debit adjustment for 12/21/2009. Do not use today's date."

21. On July 12, 2011, the Relator had a conversation with Maryann Borsack (now Weils due to marriage) with reference to contacting the patient to repay monies if the money was paid by the patient or, in keeping with various insuring agreements, contacting

the insurance provider regarding a repayment of any overpayment or duplicate payment to the insurance company which resulted in a credit balance to the patient. The conversation with Maryann Borsack appears to have been in response to the Relator's e-mail to Maryann Hayes at 9:42 a.m. questioning the procedure. The referenced e-mail is contained in the "string" attached as Exhibit "B".

22. On the afternoon of July 12, 2011 Dr. Poller called the Relator and stated something to the effect of "I understand you have a problem doing what has to be done. I'd really hate to lose a good employee over this." In reviewing the e-mails attached as Exhibit "B", it is noted that the Relator sent an e-mail to Jacqueline Hickman outlining the conversation and also indicating that the Relator had indicated to Dr. Poller that she felt it was "illegal".

23. Interestingly, on July 15, 2011, the Relator found a job posting for a "Dental Financial Coordinator" for "Allied" which appears to refer to the Relator's position. The posting is attached hereto and made a part hereof as Exhibit "C".

24. The Relator later learned through conversations that on July 19, 2011, the Financial Coordinator for Egg Harbor Family Dental (an Allied location), Debbie Kiamos, sent an e-mail to the Accounts Manager regarding the e-mail of July 12, 2011. Ms. Kiamos indicated to the Accounts Manager:

8

"Per your e-mail dated 7-12-11 regarding the debiting of the credits in the patient accounts, I have given careful consideration to this request and cannot in good conscience allow myself to participate in any activity that I feel is at the least unethical, if not illegal."

25. Also on July 19, 2011, the Financial Coordinator from Manahawkin Family Dental

(an Allied location), Jacqueline Hickman, wrote to the Accounts Manager and stated

in part:

"Right before our conversation, I had started an e-mail to you. I have been hearing that there are some concerns about the credit report adjustment you had asked us to do. I, myself, have also been feeling uncomfortable with why this report is being done. I just need an explanation as to the reasoning. I understand my job is to adjust accounts to proper accounting and I have never made a complaint in the past. I just have a feeling something is morally/ethically not right here. I did not have a problem last year doing account clean-ups since it was our money we were owed being adjusted. As I started working in the accounts, there were so many accounts I did not feel comfortable just debiting to a zero balance.

The one account is a [sic] 88 year old woman with a huge credit balance. I just feel we have not settled with the patients and I don't understand why we are not…"

26. The account crediting directed by the Accounts Manager varied from a low of one

cent to a high of $1,170.00 for each individual patient.

27. The credits which were removed from patient accounts at the direction of the

Accounts Manager were payments that were made by a diverse yet ascertainable

source. In some cases, the monies were paid by the patients with or without

insurance coverage (i.e. co-pays or deductibles), in other cases, the monies were paid

9

by insurance carriers; dental programs; PPO plans and other plans from the U.S. Government; PPO plans of Family Care from the State of New Jersey or other group benefit plans (Labor Union, County Self-Insured programs or other governmental entity self-insured programs).

28. The Relator is only familiar with the amounts directly related to the office in which she was employed. In July, 2011, the credits that were "wiped out" for patients totaled $173,144.74 at the Relator's location alone. This total is contained within the documents which are attached hereto and made a part hereof as Exhibit "D" and is with reference to only the amounts at the end of calendar year 2009. Attached hereto and made a part hereof as Exhibit "E" is the Adjustment Day Sheet carrying the date of December 31, 2008. The Relator learned, months later, that the corporation had gone into all of the different office computers and had attempted to "wipe out" credits on patient accounts which predated December 31, 2008. Exhibit "E" Adjustment Day Sheet 12-31-2008, shows debit adjustments in the amount of $27,108.35 for the Shore Family Dental Associates Allied location only. Thus, the total for all of the write downs which were taken directly by the Corporate Office and those which were directed to be done at the local office would have exceeded $200,000.00 for the Shore Family Dental Associates "Allied" location alone.

29. It is believed that the crediting which is characterized as December 31, 2008 coupled with the debit Adjustment Day Sheet dated December 31, 2009 would be roughly an average for each of the approximately 22 offices.  If the Relator's office is in fact "average" for the 22 offices, the one-time credit "wipe out" removed or converted in excess of $4.4 million of monies owed by "Allied" to various individuals, insurance companies and credit entities and/or banks.

30. At the same time the effort was being made in July, 2011, it was "rumored" that "Allied" was attempting to develop a banking relationship for purposes of increasing the number of office locations even further or having the ability to borrow money for accounting software.   In or around this time, someone called on behalf of Dr. Poller (it may have been a woman named "Amy") indicating that Dr. Poller would be coming to the Shore Family location with "investors".  The Relator does not have a specific recollection of the day, however, does recall that call as well as a group of individuals coming with Dr. Poller within a short time following the direction to "wipe out" the credit accounts. The Relator has a specific recollection of this as she was somewhat taken aback that Dr. Poller spoke with her about the investors and the fact that he was "looking to get software" and spoke directly to her in such close proximity and time to what she viewed as the threat of July 12, 2011.

31. "Allied" accepts various insurances that are, in some cases, funded by Employee Benefit Plans ("ERISA"), federally funded (federal employees, Medicaid and/or Medicare, Managed Care Programs and "needs based") plans; and State of New Jersey plans (federal employees, Medicaid and/or Medicare, Managed Care Programs and "needs based").  Although it is not exhaustive, "Allied" has accepted insurance payments from United Healthcare Community Plan (believed to be a Family Care Plan funded by the State of New Jersey); Horizon New Jersey Health (believed to be a Family Care Plan funded through the State of New Jersey); Aetna (various employees including, but not limited to, state employees); Blue Cross/Blue Shield (including, but not limited to, a federal employee program); GHI (believed to be a federal employee program); Horizon Dental Choice (believed to be a managed care plan funded by the State of New Jersey); MetLife (various employee plans including, but not limited to, federal employees); Oxford (a managed care plan, however, the Relator is not sure as to whether or not this is a state or federal plan); United Concordia (various employee plans including, but not limited to, federal employees) and other plans through self-funded entities including the County of Ocean.

32. The various dentists who either own "Allied", are shareholders or partners, collectively determined that this action should be taken.

33. Although the Relator cannot be entirely sure, it is believed that the action was taken to present a substantially more attractive "financial snapshot" of "Allied". By way of example, if "Allied" presented a balance sheet to a federally insured bank that did not include these "credits" exceeding $4.4 million, the ability to borrow money and/or qualify for loans or lines of credit would be substantially enhanced. If the amount were properly categorized in a "balance sheet", the liability would reduce the "net worth" of "Allied" by $4.4 million.

34. Although the Relator has no basis in fact to substantiate the numbers, and the numbers are only being used as an example, if a federally insured institution were considering loaning 50% of the "value" of "Allied", then "Allied" would be in a position to borrow an additional $2.2 million (50% of the $4.4 million "credit wipe out") utilizing this onetime credit elimination.

35. In support of her claim, the Relator has various documents which have been provided to the U.S. Attorney's Office for the District of New Jersey including, but not limited to, e-mails, "screen captures", debit reports, financial documents and the like. The Relator also has personal knowledge regarding the various troubling aspects of the fraud by "Allied".

36. The various defendants, individually and/or together, have either failed to pay, failed to disclose, failed to reimburse the individual patients, the United States government,

the State of New Jersey, various group health plans and/or "ERISA" plans or other insuring entities knowingly. The loss to these various entities is roughly estimated to exceed $4.4 million in the year 2011.  It is possible that the elimination of credit balances have occurred in the past, however, this particular wholesale "wipe out" of credit balances was only done during July, 2011.  However, Jacqueline Hickman does make reference to adjustments in the past in her e-mail of July 19, 2011.

37. The Relator brings this False Claims Action against the defendants pursuant to 31 U.S.C. § 3729(a) et seq. in that the defendants have conspired "to defraud the government by getting a false or fraudulent claim allowed or paid".

38. The Relator brings this claim against the defendants pursuant to the New Jersey False Claims Act ("NJFCA") N.J.S.A. § 2A:32C-1 et seq.

39. The defendants have either converted monies from individuals, local, state or federal governments, insuring entities or other organizations as a result of the "wipe out" of the credit balances.

40. Each bill for services rendered and each account which has been debited constitutes a separate and distinct violation of the Federal False Claims Act and/or The NJFCA.

41. Any financial information, balance sheets, ledgers, profit and loss statements, tax returns and/or tax return schedules which fail to reflect the debited amounts constitute separate violations under FIRREA, 12 U.S.C. § 1833a et seq. and the FIAFEA, 12

U.S.C. § 4201 et seq. Specifically, some of the patients had financed their dental work through either Chase Bank or "Care Credit". In fact, specifically, the Adjustment Day Sheets show reference to a Nicholas Bruno who was in fact financed and the debit amount should not have been "wiped out" but, in fact, should have been returned to the credit company and properly credited to his account. The Relator also has a "screen capture" which refers to a Luna Danilla who was also a credit customer with monies financed through a bank (Chase) or through Care Credit.

42. The Relator believes that the "conversion" of monies from the individual patients, regardless of source, are separate and distinct violations from the FIRREA and FIAFEA statutory provisions and each of the accounts can be violations of some or all of the enumerated statutory provisions.

43. More specifically, the Relator takes the position that a "wipe out" of a credit balance of a patient constitutes a violation under the Federal False Claims Act of NJFCA and, if the credit balance is not reflected in any financial disclosures, that selfsame "wipe out" would constitute a violation of FIRREA and FIAFEA if the amounts owed were not reflected in documents presented to federally insured banking institutions for any reason.

44. The Relator is also aware of a practice which she is not sure is illegal. On various occasions, Dr. Poller would call the location that he owned separate and apart from

15

the other defendants to determine "how much cash" was at the location. It is believed that Dr. Poller would have the Office Manager, at that time "Linda", keep a percentage of the cash and have the balance of the cash brought to the corporate offices for Dr. Poller's use. This was learned as, in or around June or July of 2009, when the Relator was in the location owned by Dr. Poller, Dr. Poller called and spoke to an individual he thought was Linda and later learned was actually Jill. At the time, Linda was on vacation. Dr. Poller asked the individual on the phone (Jill) "how much cash" was at the location. Jill told Dr. Poller that it was $800.00. Dr. Poller said something along the lines of keep your percentage and bring the rest to my office. When Jill did not know what this meant, she indicated to Dr. Poller that it was not Linda, it was Jill. He then said keep "10%" for yourself and bring the rest to me. Jill did in fact bring the money to Dr. Poller on that day. The Relator does not know whether Jill "kept" 10%.

45. The Relator also believes that the actions of the various defendants may violate the Uniform Unclaimed Property Act of the State of New Jersey, N.J.S.A. 46:30B-1 et seq. Some of the "property" (money) was held by the defendants for in excess of three years and neither reported nor transmitted to the State of New Jersey pursuant to the Act.

## ***FIRST COUNT***

### ***VIOLATION OF THE FEDERAL FALSE CLAIMS ACT***

1. Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2. Relator seeks relief against the various defendants pursuant to the False Claims Act, 31 U.S.C. § 3729(a) et seq.

3. As set forth in the preceding paragraphs, the various defendants "knowingly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government", specifically, for monies that were paid by federal government entities or programs or on behalf of federal employees for dental services in "Allied".

4. The United States was wrongfully denied payment or repayment of monies due and owing in the full amount as a result of the acts and conduct of the defendants.

5. By reason of these false claims, the United States has sustained damages in an amount to be determined at trial.

17

6.  By reason of these false claims, the defendants should be obligated to pay, pursuant to the provisions of the False Claims Act, a penalty amount to be determined by the court for each and every violation.  Each account that was subject to a "wipe out" of a credit balance constitutes a separate and distinct violation.  It is verily believed that the total number of accounts that were "wiped out" exceed 5,000 separate accounts.

7.  Defendants should be obligated to pay treble damages pursuant to the Act.

## *SECOND COUNT*

### *CONSPIRACY TO VIOLATE THE FEDERAL FALSE CLAIMS ACT*

1.  Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2.  As set forth in the preceding paragraphs, the defendants have conspired with each other to defraud the United States when they "knowingly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government" specifically, for monies that were paid by federal government entities or programs or on behalf of federal employees for dental services in "Allied".

3.  Accountants 1-10 participated in the conspiracy by advising "Allied" to eliminate the credit balance.

4. The United States was wrongfully denied payment or repayment of due and owing in the full amount as a result of the acts and conduct of the defendants.

5. By reason of these false claims, the United States has sustained damages in an amount to be determined at trial.

6. By reason of these false claims, the defendants should be obligated to pay, pursuant to the provisions of the False Claims Act, a penalty amount to be determined by the court for each and every violation. Each account that was subject to a "wipe out" of a credit balance constitutes a separate and distinct violation. It is verily believed that over 5,000 patient accounts were "wiped out" in this one action.

7. Defendants should be obligated to pay treble damages pursuant to the Act.


### *THIRD COUNT*

### *NEW JERSEY FALSE CLAIMS ACT*

1. Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2. Relator seeks relief against the various defendants pursuant to the New Jersey False Claims Act, specifically, N.J.S.A. 2A:32C-1 et seq.

3. As set forth in the preceding paragraphs, the defendants are liable to the state for treble damages and a civil penalty of not less than and not more than the civil

19

penalty allowed pursuant to the Federal False Claims Act in that the either had possession, custody or control of public property and money used or to be used by the State of New Jersey or knowingly presented or caused to be presented a false or fraudulent claim for payment or approval or violated some other sub-section of N.J.S.A. 2A:32C-3.

4. The state of New Jersey was wrongfully denied payment of monies due and owing in the full amount as a result of the acts and conducts of the defendant, specifically, in the defendant's failing to return monies owed to the state of New Jersey.

5. By reason of these false claims, the state of New Jersey has sustained damaged in an amount to be determined at trial.

### *FOURTH COUNT*

### *CONSPIRACY TO VIOLATE OF THE NEW JERSEY FALSE CLAIMS ACT*

1. Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2. As set forth in the preceding paragraphs, the defendants have conspired with each other to defraud the state of New Jersey when they "knowingly made, used or caused to be made or used, a false record or statement to conceal, avoid, or

decrease an obligation to pay or transmit money or property to the Government" specifically, for monies that were paid by the State of New Jersey or programs or on behalf of state employees for dental services in "Allied".

3. Relator seeks relief against the various defendants pursuant to the New Jersey False Claims Act, specifically, N.J.S.A. 2A:32C-1 et seq.

4. As set forth in the preceding paragraphs, the defendants are liable to the state for treble damages and a civil penalty of not less than and not more than the civil penalty allowed pursuant to the Federal False Claims Act in that the either had possession, custody or control of public property and money used or to be used by the State of New Jersey or knowingly presented or caused to be presented a false or fraudulent claim for payment or approval or violated some other sub-section of N.J.S.A. 2A:32C-3.

5. The state of New Jersey was wrongfully denied payment of monies due and owing in the full amount as a result of the acts and conducts of the defendant, specifically, in the defendant's failing to return monies owed to the state of New Jersey.

6. By reason of these false claims, the state of New Jersey has sustained damaged in an amount to be determined at trial.

### *FIFTH COUNT*

### *VIOLATION OF THE FINANCIAL INSTITUTIONS REFORM RECOVERY AND ENFORCEMENT ACT OF 1989 (FIRREA) AND/OR VIOLATION OF THE FINANCIAL INSTITUTIONS ANTI-FRAUD ENFORCEMENT ACT OF 1990 (FIAFEA)*

1. Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2. The defendants have provided information which has affected a depository institution or other agency or entity of the United States in violation of 12 U.S.C. § 4201(a) et seq.

3. The defendants have caused the financial institutions to be affected as the financial institutions have been exposed to liability as a result of the fraudulent and/or inaccurate information supplied to the financial institutions in violation of FIRREA and FIAFEA.

4. Due to the defendants' violation of FIRREA, civil penalties are owed for each separate fraud in the amount of $1 million to $5 million per violation as provided in 12 U.S.C. § 1833(a)(b)(1) & (2)

22

5.  The Relator also wishes to exercise its right to select counsel to prosecute a civil allowance action in keeping with 12 U.S.C. § 4205(b) should the Attorney General elect not to proceed with the case within one year.

6.  By reason of these violations, the defendant should be obligated to pay penalties, fines, attorney's fees, costs and interest in an amount to be determined at the time of trial.

## *SIXTH COUNT*

### *NEW JERSEY UNIFORM UNCLAIMED PROPERTY ACT*

1.  Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2.  Defendants have engaged in a pattern by failing to both report and transfer property which was abandoned and/or unclaimed as defined by N.J.S.A. 46:30B-7.

3.  The credit balance of the various patients held for a period and unclaimed for three years or more is presumed to be abandoned pursuant to the Act.  N.J.S.A. 46:30B-42.

4.  The Relator believes that the defendants have failed to comply with the reporting provision in N.J.S.A. 46:30B-46.

5. The Relator believes that the defendants have failed to comply with the provisions of N.J.S.A. 46:30B-50 in failing to notify the "apparent owner" in a timely manner and in the manner provided by statute.

6. The Relator believes that the defendants have failed to deliver all of the unclaimed property herein, specifically, the credit balances which exceeded three years in violation of N.J.S.A. 46:30B-57.

7. Since this is a claim, the defendant should be obligated to pay interest at the annual rate of ten percent (10%) above the annual "discount rate" as provided for in N.J.S.A. 46:30B-103.

8. The defendants, due to their willful failure to provide reports or deliver property, should have a civil penalty of $200.00 for each day that the report has not been made or the property has not been delivered up to the maximum of $100,000.00 pursuant to N.J.S.A. 46:30B-104.

9. The defendants, due to their willful failure to pay, should have a civil penalty of $1,000.00 for each day that the payment has not been made up to the maximum of $250,000.00 plus 25% of the value of the property that should have been but was not reported pursuant to N.J.S.A. 46:30B-105.

### ***SEVENTH COUNT***

### COMMON LAW FRAUD

1. Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2. The defendants have engaged in a pattern and practice whereby they eliminated credit balances paid by or on behalf of patients of "Allied". The "wipe out" of the credit to patient accounts constituted a common law fraud as the defendants have failed to notify the entity that paid the amount of the "wipe out".

3. As a result of the fraudulent conduct, the United States, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients were defrauded of the "credit".

4. By reason of these payments, the United States, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients have sustained damages in an amount to be determined at trial.

### EIGHTH COUNT

### UNJUST ENRICHMENT

1. Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

25

2. The defendants conduct has unjustly enriched them with monies which in good conscience they should not be permitted to retain.

3. The defendants have been unjustly enriched to the detriment of the United States, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients.

4. By reason of the "wipe out" of the credit balances described above, the United States, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients are entitled to damages in an amount to be determined at trial, exclusive of interests and costs.

## *NINTH COUNT*

### *FRAUD IN THE INDUCEMENT*

1. Relator incorporates by reference all of the preceding paragraphs as if more fully set forth herein.

2. The defendants made material and false representations to the United States Government, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients by the "wipe out" of the credit balances.

3. The defendants made the representation with the intent to deceive. The United States Government, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients did in fact rely on these representations to the detriment of the United

States Government, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients.

4. The representation caused injury to the United States Government, the State of New Jersey, ERISA plans, other employee plans, employers and/or patients in that the credit was removed from all patient accounts.

### TENTH COUNT

### VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

1. Relator repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

2. Covenants of good faith and fair dealing arise when parties enter into contracts or implied contracts such as those at issue in the instant matter and such covenants in fact arose in the instant matter.

3. At all times relevant hereto, Relator acted in good faith and yet, defendants failed to act in good faith when rendering performance under the contracts/addendums binding the parties and/or by failing to render timely and/or valid and/or effective performance and/or by failing to render full and complete performance under the

27

warranties/guarantees and/or by concealing or misrepresenting the respective parties'

obligations and/or duties under same.

4.  Defendants' actions as aforesaid violate the covenants of good faith and fair dealing

that arose relative to the transaction and/or any warranties that defendants issued to

plaintiffs.

5.  As a result of defendants' conduct as aforesaid, plaintiffs suffered damages.

### *ELEVENTH COUNT*

### *VIOLATION OF THE NEW JERSEY RICO*

1.  Relator repeats all of the allegations contained in the previous paragraphs as if more

fully set forth herein.

2.  Relator is a "person" as defined by N.J.S.A. 2C:41-1(b).

3.  Defendants are "persons" as defined by N.J.S.A. 2C:41-1(b).

4.  During the applicable period, "Allied", including but not limited to each of the

individual offices, constituted an "enterprise" as that term is defined in N.J.S.A.

2C:41-1 ( c ).

5.  During the applicable period, Edward Poller, DDS; constituted an "enterprise" as that

term is defined in N.J.S.A. 2C:41-1 ( c ).

6. During the applicable period, Glenn Prager, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 ( c ).

7. During the applicable period, Christopher Emma, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 ( c ).

8. During the applicable period, Todd Prager, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 ( c ).

9. During the applicable period, Daniel DiCesare, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 ( c ).

10. An association-in-fact between "Allied" and Edward Poller, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 et seq. and as outlined in the applicable paragraphs under "Background Facts".

11. An association-in-fact between "Allied" and Glenn Prager, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 et seq. and as outlined in the applicable paragraphs under "Background Facts".

12. An association-in-fact between "Allied" and Christopher Emma, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 et seq. and as outlined in the applicable paragraphs under "Background Facts".

13. An association-in-fact between "Allied" and Todd Prager, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 et seq. and as outlined in the applicable paragraphs under "Background Facts".

14. An association-in-fact between "Allied" and Daniel DiCesare, DDS constituted an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 et seq. and as outlined in the applicable paragraphs under "Background Facts".

15. An association-in-fact between Edward Poller, Greg Prager, Todd Prager, Christopher Emma and Daniel DiCesare, jointly, severally, or in combination of some, constitutes an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 et seq. and as outlined in the applicable paragraphs under "Background Facts".

16. An association-in-fact between the Accountants, Dentists and/or "Allied", jointly, severally, or in combination of some, constitutes an "enterprise" as that term is defined in N.J.S.A. 2C:41-1 et seq. and as outlined in the applicable paragraphs under "Background Facts".

17. As set forth in the foregoing paragraphs, "Allied" engaged in a "pattern of racketeering activity" as that term is defined in N.J.S.A. 2C:41-1(d) (1) and as outlined in the applicable paragraphs under "Background Facts".

18. As set forth in the foregoing paragraphs, Edward Poller, DDS engaged in a "pattern of racketeering activity" as that term is defined in N.J.S.A. 2C:41-1(d) and as outlined in the applicable paragraphs under "Background Facts".

19. As set forth in the foregoing paragraphs, Glenn Prager, DDS engaged in a "pattern of racketeering activity" as that term is defined in N.J.S.A. 2C:41-1(d) and as outlined in the applicable paragraphs under "Background Facts".

20. As set forth in the foregoing paragraphs, Christopher Emma, DDS engaged in a "pattern of racketeering activity" as that term is defined in N.J.S.A. 2C:41-1(d) and as outlined in the applicable paragraphs under "Background Facts".

21. As set forth in the foregoing paragraphs, Todd Prager, DDS engaged in a "pattern of racketeering activity" as that term is defined in N.J.S.A. 2C:41-1(d) and as outlined in the applicable paragraphs under "Background Facts".

22. As set forth in the foregoing paragraphs, Daniel DiCesare, DDS engaged in a "pattern of racketeering activity" as that term is defined in N.J.S.A. 2C:41-1(d) and as outlined in the applicable paragraphs under "Background Facts." .

23. As set forth in the foregoing paragraphs, the Accountants engaged in a "pattern of racketeering activity" as that term is defined in N.J.S.A. 2C:41-1(d) and as outlined in the applicable paragraphs under "Background Facts.".

24. All of the plaintiffs have been damaged in their business or propriety by reason of defendant's violation of N.J.S.A. 2C:41-2.

25. Defendants' conduct may have also constituted violations of applicable provisions of New Jersey Statutes, the New Jersey Administrative Code, the federal statutes pled herein and/or the Code of Federal Regulations.

26. Plaintiffs bring this action pursuant to N.J.S.A. 2C:41-1 et seq. and in accordance therewith, seek statutory treble damages, attorney's fees, filing fees and court costs.

## TWELFTH COUNT

### RETALIATION

1. Relator repeats all of the allegations contained in the previous paragraphs as if more fully set forth herein.

2. No later than, and as early as, July 12, 2011, the Relator engaged in protected conduct as that term is defined in both the Federal False Claims Act, the New Jersey State False Claims Act and other statutes, rules, codes or other protections.

3. The Relator was harassed and/or threatened by her employer because of the willful expressions or acts of the Relator in furtherance of the action.

4. In addition to the harassment, the Relator was terminated as a result of her conduct on February 12, 2012.

32

5. The defendants' retaliatory conduct violates the Federal False Claims Act, the New Jersey State False Claims Act and other statutes, rules, codes or other protections.

6. The Relator has been damaged as a result of the defendants' retaliation against her for her protected activities.

### *PRAYER FOR RELIEF*

WHEREFORE, the Relator, on behalf of the United States, the State of New Jersey and other parties requests that judgment be entered in its favor and against the various defendants jointly and severally as follows:

a. On each of the claims for violation of the False Claims Act, 31 U.S.C. § 3729(a) et. seq. treble damages calculated in an amount to be determined at trial plus $10,000.00 penalty for each account of a patient;

b. On each of the claims of the violation of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 et seq. treble damages calculated in an amount to be determined at trial plus $10,000.00 penalty for each account of a patient;

c. The defendant should be obligated to pay interest at the annual rate of ten percent (10%) above the annual "discount rate" as provided for in N.J.S.A. 46:30B-103;

d. The defendants, due to their willful failure to provide reports or deliver property, should have a civil penalty of $200.00 for each day that the report has not been

33

made or the property has not been delivered up to the maximum of $100,000.00 pursuant to N.J.S.A. 46:30B-104;

e. The defendants, due to their willful failure to pay, should have a civil penalty of $1,000.00 for each day that the payment has not been made up to the maximum of $250,000.00 plus 25% of the value of the property that should have been but was not reported pursuant to N.J.S.A. 46:30B-105;

f. A penalty of an amount of $1 million to $5 million per violation as provided in 12 U.S.C. § 1833(a) (b) (1) and (2).

g. An award of costs pursuant to N.J.S.A. 2C:41-1 et seq. on all of the claims;

h. Compensatory damages;

i. Double the amount of lost pay in compensation for all special damages due to the retaliation;

j. Any other applicable consequential, incidental, nominal and expectation damages;

k. Lawful interest, attorney's fees, filing fees court costs and such other and further relief as the court shall deem equitable and just; and,

l. An Order granting such other relief as this court deems just and appropriate.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, MICHAEL D. FITZGERALD, ESQUIRE is hereby designated as trial counsel for the Plaintiffs in the above-captioned matter.

### DEMAND FOR JURY TRIAL

Plaintiff/Relator on behalf of herself and the United States of America, demands a jury trial on all claims alleged herein.

MICHAEL D. FITZGERALD, ESQUIRE
Law Offices of Michael D. Fitzgerald
800 Old Bridge Road
Brielle, New Jersey 08730
(732) 223-2200 – phone
(732) 223-7299 – facsimile
mdfitz@briellelaw.com

35

## *CERTIFICATION OF SERVICE*

This is to certify that a copy of the foregoing will be served on the _____ day of

December, 2012 via Federal Express Next Day Air, fee prepaid, to:

**Eric H. Holder, Jr., United States Attorney General**
**Department of Justice**
**950 Pennsylvania Avenue, N.W.**
**Washington, DC 20530-0001**

**Clerk's Office**
**Office of the United States Attorney**
**970 Broad Street, Room 700**
**Newark, New Jersey 07102**

**Jeffrey S. Chiesa, Attorney General**
**Office of the Attorney General**
**P.O. Box 080**
**Trenton, New Jersey 08625-0080**